# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STATE OF OHIO,<br><br>    *Plaintiff*,<br><br>v.<br><br>JANET YELLEN, in her official capacity as Secretary of the Treasury; RICHARD K. DELMAR, in his official capacity as acting inspector general of the Department of Treasury; and U.S. DEPARTMENT OF THE TREASURY;<br><br>    *Defendants*. | No. 1:21-cv-181<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

# INTRODUCTION

1. This suit challenges an unconstitutional provision in the American Rescue Plan Act—a provision that allows the federal government to commandeer state taxing authority, and that the Act coerces the States into accepting.

2. The Act includes a $195.3 billion aid program intended to, among other things, help States recover from the pandemic-caused downturn.

3. The aid program, which appears in §9901 of the Act, contains a provision that this complaint calls the "Tax Mandate."

4. The Tax Mandate forbids States from using funds received under the Act to "directly or indirectly" offset a "reduction in net tax revenue" caused by a change in tax policy. American Rescue Plan Act of 2021, Pub. L. No. 117-2, §9901 (2021) (adding §602(c)(2) to the Social Security Act (42 U.S.C. §801 et seq.)).

5. Another provision in §9901 empowers the Secretary of the Treasury to recoup federal funds that she thinks the State used to offset revenue loss from a tax reduction in violation of the Tax Mandate. *Id.* (adding §602(e) to the SSA).

6. Money is fungible, so *any* revenue lost from a tax credit, deduction, rebate, delay, or decrease that Ohio legislators or executive officers may implement would be "indirectly" offset by the $5.5 billion the State expects to receive pursuant to the Act. Thus, the Tax Mandate effectively prohibits reductions in taxes: any State that reduces taxes, and that experiences a loss in tax revenue, is subject to having billions of dollars in federal funding recouped by the Department of the Treasury.

7. Congress has no direct authority to "require the States to govern according to Congress's" preferred tax regime. *New York v. United States*, 505 U.S.

1

144, 162 (1992). And while the Spending Clause of the U.S. Constitution empowers Congress to "provide for … the general Welfare," Congress may not use its influence under the Spending Clause to *coerce* the States to adopt Congress's tax preferences, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (op. of Roberts, C.J.).

8. Congress, through the Act, has coerced Ohio and its sister States into accepting a limitation on their sovereign authority as a condition for their being allowed to use badly needed federal funding.

9. Ohio seeks to enjoin federal officials from enforcing the unconstitutional Tax Mandate, and seeks declaratory relief establishing that the State of Ohio, under the Tenth Amendment to the U.S. Constitution, retains the freedom to manage its own tax policy.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and §§2201–02.

11. Venue is proper in this judicial district under 28 U.S.C. §1391(e)(1).

12. The State of Ohio has standing to challenge the Tax Mandate, and to seek injunctive and declaratory relief. The Mandate injures the State by unconstitutionally intruding on the State's sovereign authority, by interfering with the State's orderly management of its fiscal affairs, and by subjecting the State to the risk that it may be made to return funding to the federal government. *See Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232 (6th Cir. 1985); *Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989); *Texas v. United States*, 809 F.3d 134, 155–57 (5th Cir. 2015); *see also Barnes v. E-Systems*, 501 U.S. 1301, 1304 (1991)

(Scalia, J., in chambers). Injunctive or declaratory relief would redress the State's injuries.

## PARTIES

### I. Plaintiff

13. Plaintiff, the State of Ohio, is a sovereign State of the United States of America.

### II. Defendants

14. Janet L. Yellen is the Secretary of the Treasury, and is named in her official capacity. The Secretary of the Treasury is responsible for administering the coronavirus local fiscal recovery fund created by §9901 of the American Rescue Plan Act of 2021.

15. Richard K. Delmar is the Acting Inspector General of the Department of Treasury, and is named in his official capacity. The Inspector General is responsible for monitoring and oversight of existing coronavirus relief funds to the States, and is generally responsible for informing the Secretary of the Treasury about programs administered by the Department and advising on the necessity for corrective action.

16. The Department of the Treasury is an agency of the United States and is additionally responsible for administering the coronavirus local fiscal recovery fund created by §9901 of the American Rescue Plan Act of 2021.

## FACTUAL ALLEGATIONS

### I. The American Rescue Plan Act

17. On March 11, 2021, President Biden signed into law a $1.9 trillion stimulus package, the "American Rescue Plan Act," H.R. 1319. The text of the Act is

available at https://www.congress.gov/bill/117th-congress/house-bill/1319/text.

18. The Act appropriates $195.3 billion in aid to the States and the District of Columbia. Pub. L. No. 117-2, §9901 (adding §602(b)(3)(A) to the Social Security Act). Of that amount, $25.5 billion is allocated equally among the States and the District. The remainder, minus additional money for Washington, D.C., is distributed based on each State's average number of unemployed individuals from October through December of 2020. *Id.* (adding §602(b)(3)(B) to the SSA).

19. The State of Ohio is expected to receive $5.5 billion in aid under the Act. Jared Walczak, *State Aid in American Rescue Pan Act is 116 Times States' Revenue Losses*, TAX FOUNDATION (Mar. 3, 2021), https://taxfoundation.org/state-and-local-aid-american-rescue-plan/. Additional billions will be sent to Ohio's localities directly and are not the subject of this suit. *Id.*

20. The American Rescue Plan Act's funds are available to the States "through December 31, 2024." Pub. L. No. 117-2, §9901 (adding §602(a) to the SSA).

21. The Act's "Tax Mandate" is the provision in §9901 of the Act that provides:

> A State or territory shall not use the funds provided under this section or transferred pursuant to section 603(c)(4) *to either directly or indirectly offset a reduction in the net tax revenue* of such State or territory resulting from a change in law, regulation, or administrative interpretation during the covered period that reduces any tax (by providing for a reduction in a rate, a rebate, a deduction, a credit, or otherwise) or delays the imposition of any tax or tax increase.

(emphasis added).

22. If a State violates the Tax Mandate, the Secretary of the Treasury shall

4

recoup the lesser of: (1) the amount of the applicable reduction to net tax revenue; or (2) the amount of funds the State received from the federal government. Pub. L. No. 117-2, §9901 (adding §602(e) to the SSA).

23. The Act does not provide any process for a State to dispute an alleged violation of the Tax Mandate.

24. The Act gives the Secretary broad authority to issue regulations "necessary or appropriate to carry out" the program. *Id*. (adding §602(f) to the SSA).

## II. Ohio's Budget

25. The State expects to receive $5.5 billion from the American Rescue Plan Act to help Ohio and its citizens recover from the devastating effects of the pandemic.

26. $5.5 billion fills such a large and urgent need in Ohio's budget that Ohio has no real choice except to take the funds, especially while attempting to respond to the economic instability wrought by the COVID-19 pandemic.

27. The pandemic brought a drastic economic slowdown, substantially affecting available funds and thus Ohio's ability to support needed programs.

28. The State of Ohio is obligated to maintain a balanced budget. If anticipated receipts and available balances in the State's general revenue fund will likely be less than appropriations from that fund, the Governor must order spending reductions to prevent a deficit. Ohio Rev. Code §126.05; *see also* Ohio Legislative Service Commission, A Guidebook for Ohio Legislators at 98–99 (2021), https://www.lsc.ohio.gov/documents/reference/current/guidebook/17/Guidebook.pdf.

29. In April 2020, tax revenues fell $866.5 million below estimate, a 35.3

percent drop. *See* Monthly Financial Report at 13, Ohio Office of Budget and Management (May 11, 2020), https://archives.obm.ohio.gov/Files/Budget_and_Planning/Monthly_Financial_Report/2020-05_mfr.pdf. In May 2020, Governor DeWine ordered $775 million in spending cuts, including to K-12 schools and Medicaid. *See* Randy Ludlow, *Coronavirus in Ohio: $775 million in budget cuts due to pandemic include $300 million reduction to schools*, THE COLUMBUS DISPATCH (May 5, 2020), https://www.dispatch.com/news/20200505/coronavirus-in-ohio-775-million-in-budget-cuts-due-to-pandemic-include-300-million-reduction-to-schools.

30. Tax revenues for fiscal year 2020 fell $1.1 billion below estimate. More broadly, total non-federal revenues finished the fiscal year $1.2 billion below estimate. *See* Monthly Financial Report at 11, Ohio Office of Budget and Management, (July 10, 2020), https://archives.obm.ohio.gov/Files/Budget_and_ Planning/Monthly_Financial_Report/2020-07_mfr-final.pdf.

31. Ohio's economy contracted 3.5 percent between the end of 2019 and the third quarter of 2020, mirroring the national economy, which experienced the largest economic decline since just after World War II. *See* Monthly Financial Report at 2, Ohio Office of Budget and Management (Mar. 10, 2021), https://archives.obm.ohio.gov /Files/Budget_and_Planning/Monthly_Financial_Report/2021-03_mfr.pdf; Baseline Forecast Testimony at 1, Ohio Legislative Service Commission, *available at* https://www.lsc.ohio.gov/documents/budget/134/mainoperating/IN/HF%20forecast% 20testimony.pdf (last visited Mar. 16, 2021).

32. Meanwhile, demand for various state services has increased. Medicaid

6

enrollment, for example, has increased by 369,100 individuals since February 2020. *See* Monthly Financial Report at 22, Ohio Office of Budget and Management (Mar. 10, 2021), https://archives.obm.ohio.gov/Files/Budget_and_Planning/Monthly _Financial_Report/2021-03_mfr.pdf.

33. For fiscal year 2019, a comparatively "normal" year, which ran July 1, 2018, through June 30, 2019, the State of Ohio budgeted $78 billion and spent $71 billion. For fiscal year 2020, which ended June 30, 2020, the State budgeted $77.9 billion and spent $74.6 billion. For fiscal year 2021, Ohio budgeted $93.3 billion, and through the first nine-and-a-half months of the fiscal year, it has spent 62.1 percent of that budget. *See* Ohio Office of Budget and Management, Ohio Checkbook, https://checkbook.ohio.gov/State/Budgets/default.aspx (last visited Mar. 15, 2021) (to view the data for each year, select the dropdown menu under "Fiscal Year," which is located at the top of the graph).

34. The amount of money at stake—$5.5 billion—represents 7.7 percent of Ohio's 2019 expenditures, 7.4 percent of Ohio's 2020 expenditures, and 5.9 percent of Ohio's anticipated 2021 budget.

35. Looking at the nation as a whole, total state spending reached $2.26 trillion in fiscal year 2020, up from $2.1 trillion in fiscal year 2019. *See* Summary: 2020 State Expenditure Report at 1, National Association of State Budget Officers, https://higherlogicdownload.s3.amazonaws.com/NASBO/9d2d2db1-c943-4f1b-b750-0fca152d64c2/UploadedImages/Issue%20Briefs%20/Summary_of_2020_State _Expenditure_Report.pdf. Thus, the $193.6 billion package to the fifty States

7

(subtracting $1.7 billion for the District of Columbia), represents 8.6 percent of total state expenditures for 2020 and 9.2 percent for 2019.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of U.S. Constitution, Article I; Violation of the Spending Clause, U.S. Const., Art. I, §8, cl.1**

36. The State incorporates by reference the allegations of the preceding paragraphs.

37. Article I of the U.S. Constitution enumerates Congress's legislative powers.

38. Article I does not give Congress the power to "issue direct orders to the governments of the States." *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018).

39. Congress may not use the Spending Clause, art. I, §8, cl. 1, to "indirectly coerce[] a State to adopt a federal regulatory system as its own." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012) (op. of Roberts, C.J.). Congress violates its Spending Clause power when it coerces States into agreeing to limit their sovereign authority by offering financial inducements that States cannot practically refuse. *Id*.

40. In the current economic climate, Ohio has "no real choice," *id.* at 587, but to accept the $5.5 billion available through the American Rescue Plan Act—a figure that represents 7.4 percent of Ohio's total expenditures in fiscal year 2020.

41. By accepting that money, the State must sacrifice its sovereign authority to set tax policy as it sees fit, because changes to tax policy that reduce revenues violate the Tax Mandate. Such violations could be used to force the State to return funding received through the Act.

8

42. Because Ohio and other States are coerced into accepting the limitations on their sovereign authority that the Tax Mandate imposes, Congress exceeded its authority under the Spending Clause when it enacted the Tax Mandate.

43. In addition, Spending Clause legislation must articulate "unambiguously" the conditions it imposes on the States, enabling them to understand the consequences of accepting funds. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). The Tax Mandate runs afoul of this requirement, because it is ambiguous regarding what precisely constitutes a change in state tax policy that "indirectly" offsets a loss in tax revenue.

44. None of Congress's other enumerated powers authorized it to enact the Tax Mandate.

## SECOND CLAIM FOR RELIEF
### Violation of the U.S. Constitution, Tenth Amendment; Violation of Anticommandeering Principle

45. The State incorporates by reference the allegations of the preceding paragraphs.

46. The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

47. "[T]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York v. United States*, 505 U.S. 144, 162 (1992). This prohibition against commandeering state governments serves important values, such as safeguarding

9

individual liberty and promoting political accountability. *Murphy*, 138 S. Ct. at 1477.

48. The Constitution neither takes the power to set state tax policy from the States, nor empowers the federal government to commandeer state taxing authority.

49. Because the Tax Mandate commandeers the States' sovereign authority to set tax policy, it violates the Tenth Amendment.

## PRAYER FOR RELIEF

50. The State requests that this Court:

   a. Declare the Tax Mandate in §9901 of the American Rescue Plan Act of 2021—the provision amending the Social Security Act to include the new §602(c)(2)(A), *see* Pub. L. No. 117-2, §9901—to be in excess of Congress's powers enumerated in Article I, and thus unenforceable;

   b. Declare that the Tax Mandate violates the Tenth Amendment to the Constitution of the United States, and is thus unenforceable;

   c. Enjoin the defendants, and any other agency or employee of the United States, from recouping funds, as provided in Pub. L. No. 117-2, §9901, based on a violation of the Tax Mandate; and

   d. Enjoin the defendants, and any other agency or employee of the United States, from otherwise enforcing the Tax Mandate against Ohio.

Dated:  March 17, 2021	DAVE YOST
	Ohio Attorney General

	*/s/ Benjamin  M. Flowers*
	BENJAMIN M. FLOWERS* (0095284)
	Solicitor General
	  *Counsel of Record
	ZACHERY P. KELLER (0086930)
	MAY DAVIS (PHV application pending)
	Deputy Solicitors General
	30 East Broad Street, 17th Floor
	6l4-466-8980
	benjamin.flowers@ohioattorneygeneral.gov

	Counsel for the State of Ohio

11