**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cv-181-DRC |
| | ) | |
| JANET YELLEN, in her official capacity | ) | |
| as Secretary of the Treasury; RICHARD K. | ) | |
| DELMAR, in his official capacity as acting | ) | |
| Inspector General of the Department of | ) | |
| Treasury; and U.S. DEPARTMENT OF | ) | |
| THE TREASURY, | ) | |
| | ) | |
| Defendants. | ) | |

***AMICUS CURIAE* BRIEF OF SEVENTY-FOUR (74) MEMBERS OF THE U.S.
SENATE AND U.S. HOUSE OF REPRESENTATIVES AND THE AMERICAN
CENTER FOR LAW AND JUSTICE IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

R. JASON HOWARD*
Howard Law Office
Claypool Building, Suite 304
4130 Linden Avenue
Dayton, Ohio 45432-3033
(*Local Counsel for Amici Curiae*)

JAY ALAN SEKULOW**
   *Counsel of Record*
STUART J. ROTH**
ANDREW J. EKONOMOU**
JORDAN SEKULOW**
BENJAMIN P. SISNEY*
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel.: 202-546-8890
Email: sekulow@aclj.org
     bsisney@aclj.org
*Counsel for Amici Curiae*

April 9, 2021

*Admitted to practice before this Court
** Not admitted to practice before this Court

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law and Justice (ACLJ) is a non-profit legal corporation dedicated to the defense of constitutional liberties secured by law. The ACLJ has no parent corporation and issues no stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT …………………….............. ii

TABLE OF CONTENTS………………………………………………............iii

TABLE OF AUTHORITIES………………………………………............iv

INTEREST OF *AMICI* …………………………………………......……...6

SUMMARY OF THE ARGUMENT……………………………………......8

ARGUMENT …………………………………………………………..9

I.    Congress Possesses Conditioning Authority Under the Spending Clause,
      but It is Limited …………………………………………………..11
II.   Congress's Tax Mandate Crosses the Line from Lawful Condition to
      Unconstitutional Compulsion ……………………………………13
III.  The Tax Mandate Is Unconstitutional Either as an Unambiguous,
      Compulsory Encroachment upon Ohio's Sovereignty, or as an
      Invalidly Ambiguous Condition …………………………………15

CONCLUSION ………………………………………………….............19

CERTIFICATE OF SERVICE …………………………………………..20

# TABLE OF AUTHORITIES

**Cases:** *Page(s)*

*Alden v. Maine*, 527 U.S. 706 (1999) .................................................................... 13

*Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880 (E.D. Ky. 2016) .............. 8

*Barnes v. Gorman*, 536 U.S. 181 (2002) ................................................................ 12

*Bond v. United States*, 564 U.S. 211 (2011) ........................................................... 13

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
 527 U.S. 666 (1999) .......................................................................................... 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ............................................................... 15

*Emps. of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*,
 411 U.S. 279 (1973) .......................................................................................... 15

*FERC v. Mississippi*, 456 U.S. 742 (1982) ............................................................ 11

*Hawk v. Comm'r*, 924 F.3d 821 (6th Cir. 2019) ...................................................... 8

*Hodel v. Va. Surface Mining & Reclamation Assn.*, 452 U.S. 264 (1981) ............ 11

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) ........................................... 8

*Hughes v. White*, 388 F. Supp. 2d 805 (S.D. Ohio 2005) ...................................... 17

*Lowe v. Bowers (In re Nicole Gas Prod.)*, 916 F.3d 566 (6th Cir. 2019) .............. 17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ......... 11, 12, 13, 15, 17

*New York v. United States*, 505 U.S. 144 (1992) ....................................... 11, 12, 13

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ........ 12, 14, 15, 18

*Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011) ............................................ 8

*South Dakota v. Dole*, 483 U.S. 203 (1987) .................................................... 11, 14

*Steward Machine Co. v. Davis*, 301 U.S. 548 (1937) ......................... 11, 13, 16, 17

*Tennessee v. United States Dep't of State*,

iv

329 F. Supp. 3d 597 (6th Cir. 2018) ..................................................... 11, 15, 18

**Unpublished Opinions:**

*Action Grp. Int'l, LLC v. AboutGolf, Ltd.*, No. 3:10CV2132, 2011 U.S. Dist. LEXIS 46133 (N.D. Ohio April 29, 2011) (unpublished) ..................................... 17

**Other Authorities:**

U.S. Const. art. I, §8, cl.1 .................................................................... 8, 12

American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9901 (2021) .......... 7, 8, 9

Black's Law Dictionary (11th ed. 2019) .............................................. 16

Joey Garrison, *Stimulus Tax Cut Language Rankles Republicans As Ohio AG Files Suit Against Biden Administration*, USA TODAY (Mar. 17, 2021), https://www.usatoday.com/story/news/politics/2021/03/18/ohio-attorney-general-sues-biden-administration-over-covid-19-stimulus/4746166001/. ....................... 10

## INTEREST OF *AMICI*[1]

*Amici* are seventy-four (74) elected Members of the U.S. Senate and U.S. House of Representatives.

*Amici* Members of the U.S. Senate submitting this Brief are Senators Mike Crapo, Tim Scott, John Barrasso, Marsha Blackburn, John Boozman, Mike Braun, John Cornyn, Kevin Cramer, Ted Cruz, Steve Daines, Bill Hagerty, James Lankford, Roger Marshall, Rob Portman, Jim Risch, Ben Sasse, Thom Tillis, Roger Wicker, and Todd Young.

*Amici* Members of the U.S. House of Representatives submitting this Brief are Representatives Jim Banks, Robert Aderholt, Rick Allen, Andy Biggs, Gus Bilirakis, Dan Bishop, Lauren Boebert, Kevin Brady, Mo Brooks, Ted Budd, Kat Cammack, Jerry Carl, Buddy Carter, Madison Cawthorn, Steve Chabot, James Comer, John Curtis, Warren Davidson, Byron Donalds, Jeff Duncan, Scott Fitzgerald, Scott Franklin, Bob Gibbs, Bob Good, Lance Gooden, Marjorie Taylor Greene, Glen Grothman, Michael Guest, Diana Harshbarger, Vicky Hartzler, Kevin Hern, Yvette Herrell, Ashley Hinson, Chris Jacobs, Fred Keller, Doug LaMalfa, Tom McClintock, Dan Meuser, Mary Miller, Blake Moore, Steven Palazzo, Scott Perry, Guy Reschenthaler, David Rouzer, Steve Scalise, Jason Smith, Victoria Spartz, Michelle Steel, W. Gregory Steube, Claudia Tenney, Ann Wagner, Tim Walberg, Michael Waltz, Randy Weber, and Brad Wenstrup.

---

[1] Consistent with Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* affirm that no counsel for a party authored this brief in whole or in part and that no person other than the *amici*, their members, or their counsel has made any monetary contributions intended to fund the preparation or submission of this brief.

*Amici* are involved in a wide variety of matters relating to the crisis imposed by the COVID-19 pandemic, including but not limited to communication with and assistance to constituents, the prioritization and utilization of funds, and securing the public welfare. The COVID-19 pandemic and the government's response thereto are major considerations in the lives of *amici* and their constituents. As such*, amici* have an interest in the issues raised in this case. The Court's disposition of the issues will affect the ability of *amici*'s constituents to access critical services, but also the ability of various States' executive offices to respond as effectively and efficiently as possible to the pandemic. *Amici* Seventy-Four (74) Members of the U.S. Senate and U.S. House of Representatives are aware of the implications of Congress's usage of terms and have a perspective to offer this Court which is inherently different than that of the parties.

*Amicus curiae*, the American Center for Law and Justice ("ACLJ"), is an organization dedicated to the defense of constitutional liberties secured by law and to the importance of federalism. ACLJ attorneys have argued before the Supreme Court of the United States and other federal and State courts in numerous cases involving constitutional issues. *E.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993). The ACLJ has also participated as *amicus curiae* in numerous cases involving constitutional issues before the Supreme Court and lower federal courts. *E.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007); *Van Orden v. Perry*, 545 U.S. 677 (2005). The ACLJ has also participated recently as *amicus* in other cases arising in

Ohio. *See Dave Yost, Att'y Gen. of Ohio, et al. v. Preterm-Cleveland, et al.*, No. 20-3365 (6th Cir.).

The ACLJ is devoted to the rule of law and defending individual rights and liberties, including those enumerated by the Founders in the Declaration of Independence and the United States Constitution – and those protected by the federalism established by the Founders.

*Amici curiae* Seventy-Four (74) Members of the U.S. Senate and U.S. House of Representatives and *amicus curiae* the ACLJ on behalf of its members, submit this Brief in support of the Plaintiff and its Motion for a Preliminary Injunction [Doc. # 3].

## SUMMARY OF THE ARGUMENT

The "Tax Mandate" in the American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9901 (adding § 602(c)(2)(A) to the Social Security Act (42 U.S.C. § 801 *et seq.*)) ("ARPA"), exceeds Congress's power under the Spending Clause, U.S. Const. art. I, §8, cl. 1. The conditions, *i.e.*, the "Tax Mandate," purportedly set by Congress controlling State recipients of the ARPA funds and prohibiting such States from lowering their taxes, exceed the conditioning power recognized by the Supreme Court. If the Tax Mandate is unambiguous, it amounts to an impermissible assault on Ohio's sovereignty. If it is ambiguous, it fails to pass one of the Supreme Court's clear limitations on Congress's conditioning authority. As a result, the *ultra vires* Tax Mandate is unconstitutional. For this reason, as well as those set forth in Ohio's Motion for a Preliminary Injunction [Doc. # 3], any enforcement of the Tax Mandate must be enjoined.

## ARGUMENT

Acceptance of ARPA funds – of which Ohio would be entitled to approximately $5.5 billion [Doc. 3, p. 7], is conditioned on a prohibition that bars recipient States from "directly or indirectly" offsetting revenue loss from tax reductions. This means that if Ohio accepts the funds, it is prohibited by Congress from reducing its State taxes. The reason is clear: money is fungible. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 37 (2010) ("Money is fungible, and when foreign terrorist organizations that have a dual structure raise funds, they highlight the civilian and humanitarian ends to which such moneys could be put." (internal citation, quotations and alterations omitted)); *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 79 (2011) (explaining that money is fungible where funds used to purchase a vehicle were funds not used to pay down credit card debt); *Hawk v. Comm'r*, 924 F.3d 821, 826 (6th Cir. 2019) ("Money is fungible. So is air."); *Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880, 904 (E.D. Ky. 2016) ("Because money is fungible, such benefits will to some extent have the incidental effect of allowing the institution's other funds to be used to advance their religious purposes if they wish. Indeed, any reimbursement, aid, or tax exemption necessarily frees up other funds for other purposes.").

Any funds received by Ohio via ARPA will necessarily offset, either directly *or indirectly*, every tax reduction that the State might pursue. This condition comes with teeth: "Another provision in §9901 empowers the Secretary of the Treasury to recoup federal funds that she thinks the State used to offset revenue loss from a tax reduction in violation of the Tax Mandate." [Complaint, Doc. # 2, p. 2 (citing § 9901 (adding § 602(e) to the SSA))]. This condition is not a choice. It is coercion.

9

As *amici* ACLJ and Certain Members of Congress know full well, such an attempt at coercion violates the Spending Clause of the United States Constitution and the well-established limitations on Congress's conditioning authority.

The Biden Administration has indicated that, at bottom, and in a manner that matters for purposes of this case, it views the Tax Mandate just as Ohio does:

> Treasury spokeswoman Alexandra LaManna . . . defended the provision, saying it does not prevent states from making tax cuts *but simply says pandemic relief funds can't pay for those cuts.* 'It is well established that Congress may establish reasonable conditions on how states should use federal funding that the states are provided,' she said. 'Those sorts of reasonable funding conditions are used all the time – and they are constitutional.'"[2]

Indeed, the "Biden [Administration] has promised 'fastidious' oversight over the use of funds in the relief package."[3] And,

> White House press secretary Jen Psaki on Monday said the original purpose of the state and local funding provision was 'to keep cops, firefighters, other essential employees at work and employed, and it wasn't intended to cut taxes. So I think he certainly hopes that that's how the funding is used,' she said of the president.[4]

There is a tension here: on one hand, the Treasury Department told the press that the Tax Mandate does not prevent States from cutting taxes; on the other, it also told the press that ARPA funds cannot be used to pay for those cuts. Defendants cannot have it both ways. Again, since money is fungible, these are conflicting admissions by the Treasury

[2] Joey Garrison, *Stimulus Tax Cut Language Rankles Republicans As Ohio AG Files Suit Against Biden Administration*, USA TODAY (Mar. 17, 2021), https://www.usatoday.com/story/news/politics/2021/03/18/ohio-attorney-general-sues-biden-administration-over-covid-19-stimulus/4746166001/ (emphasis added).
[3] *Id.*
[4] *Id.*

Department. Ohio has identified a congressional conditioning action that the Biden Administration intends to enforce and that the condition plainly can be used to prevent recipient states from reducing their taxes.

Certainly Congress enjoys the ability to condition funding to States. This authority is clear and settled. Just as clear and settled, though, is the fact that the conditioning authority is limited.

## I. Congress Possesses Conditioning Authority Under the Spending Clause, but It is Limited.

The United States Court of Appeals for the Sixth Circuit has neatly summarized the Supreme Court's cases recognizing limitations on Congress's conditioning authority under the Spending Clause:

> In upholding statutes in which Congress has attached strings to the receipt of federal grants, the Supreme Court has recognized limitations to Congress's power under the Spending Clause. They include: (1) the exercise of the spending power must be in pursuit of the general welfare; (2) conditions on the receipt of federal funds must be unambiguous; (3) conditions must be related to the federal interest in a particular national project or program; and (4) the legislation cannot induce the states to engage in activities that would be unconstitutional. *Dole*, 483 U.S. at 207-08 (permitting federal law conditioning receipt of highway construction funds on states' raising minimum drinking age). Additionally, "the financial inducement offered" may not be "so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 211 (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 590 (1937) (equating impermissible "coercion" with "destroying or impairing the autonomy of the states").

*Tennessee v. United States Dep't of State*, 329 F. Supp. 3d 597, 622–23 (6th Cir. 2018).

Even while vested with the authority to spend funds on the general welfare, "Congress may not simply 'commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *New York v. United*

*States*, 505 U.S. 144, 161 (1992) (quoting *Hodel v. Va. Surface Mining & Reclamation Assn.*, 452 U.S. 264, 288 (1981)). The Supreme Court "observed that 'this Court never has sanctioned explicitly a federal command to the States to promulgate and enforce laws and regulations.'" *Id.* (quoting *FERC v. Mississippi*, 456 U.S. 742, 761–62 (1982)). As a result, Congress does not possess *direct* authority to "require the States to govern according to Congress'[s]" preferred tax regime. *New York*, 505 U.S. at 162. And while the Spending Clause of the U.S. Constitution empowers Congress to "provide for . . . the general Welfare," Congress may not use conditions imposed under the Spending Clause to coerce the States to adopt Congress's tax policy preferences. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576–78 (2012) [hereinafter *NFIB*] (op. of Roberts, C.J.).

"The Spending Clause grants Congress the power 'to pay the Debts and provide for the . . . general Welfare of the United States.'" *Id.* at 576 (quoting U.S. Const., Art. I, § 8, cl. 1). As Chief Justice Roberts explained, the Court "ha[s] long recognized that Congress may use this power to grant federal funds to the States, and may condition such a grant upon the States' 'taking certain actions that Congress could not require them to take.'" *Id.* (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999)).

As the Supreme Court has recognized, "[s]uch measures 'encourage a State to regulate in a particular way, [and] influenc[e] a State's policy choices.'" *Id.* (quoting *New York*, 505 U.S. at 166) (second and third alterations original). Logically, "[t]he conditions imposed by Congress ensure that the funds are used by the States to 'provide for the . . . general Welfare' in the manner Congress intended." *Id.* Neither *amici* nor Ohio take issue

12

with Congress's conditioning authority. Instead, *amici* support Ohio in calling to this Court's attention that the conditioning authority has limits – and that those limits have been breached here.

## II. Congress's Tax Mandate Crosses the Line from Lawful Condition to Unconstitutional Compulsion.

As the Chief Justice put it, "[a]t the same time, our cases have recognized limits on Congress's power under the Spending Clause to secure state compliance with federal objectives." *Id.*

> "We have repeatedly characterized . . . Spending Clause legislation as 'much in the nature of a contract.'["] *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). The legitimacy of Congress's exercise of the spending power "thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'["] *Id.* at 17. Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system. That system "rests on what might at first seem a counterintuitive insight, that 'freedom is enhanced by the creation of two governments, not one.'["] *Bond* [*v. United States*], 564 U.S. [211,] 220-221 [(2011)] (quoting *Alden v. Maine*, 527 U.S. 706, 758 (1999)). For this reason, "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York, supra*, at 162. Otherwise the two-government system established by the Framers would give way to a system that vests power in one central government, and individual liberty would suffer.

*Id.* at 576–77.

The Supreme Court has certainly policed Congress in its attempts to coerce States to do its will. Among those cases, and critical to this Court's consideration of Ohio's lawsuit, the Supreme Court has "scrutinize[d] Spending Clause legislation to ensure that Congress is not using financial inducements to exert a 'power akin to undue influence.'"

*Id.* at 577 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). "Congress may use its spending power to create incentives for States to act in accordance with federal policies. But when 'pressure turns into compulsion,' the legislation runs contrary to our system of federalism." *Id.* at 577–78 (internal citation omitted) (quoting *Steward Mach.*, 301 U.S. at 590).

It is certainly true that "[t]he Constitution simply does not give Congress the authority to require the States to regulate." *Id.* at 578 (quoting *New York*, 505 U.S. at 178). But as the Chief Justice made clear, *this is just as* "true whether Congress directly commands a State to regulate or *indirectly coerces a State* to adopt a federal regulatory system as its own." *Id.* (emphasis added).

The case before this Court is not like *South Dakota v. Dole*, where the Supreme Court held that Congress's conditioning of funds on a certain minimum drinking age, incentivized by *a mere 5% reduction* if South Dakota were to choose a lower drinking age, was not so coercive so as to cross the line from pressure into compulsion. 483 U.S. 203, 205–06, 211 (1987). According to the Court,

> [w]hen we consider, for a moment, that all South Dakota would lose if she adheres to her chosen course as to a suitable minimum drinking age is 5% of the funds otherwise obtainable under specified highway grant programs, the argument as to coercion is shown to be more rhetoric than fact.

*Id.* at 211. No, Ohio's case is one where it could face the loss of *all* ARPA COVID-19 relief funds if it does not bend its knee to Congress's tax policy demands. That is hardly the "mild encouragement," allowed in *South Dakota v. Dole*. *Id.* No, *Dole* teaches that

congressional *encouragement* to States is permissible. Sovereignty-melting *compulsion* is not.

### III. The Tax Mandate Is Unconstitutional Either as an Unambiguous, Compulsory Encroachment Upon Ohio's Sovereignty, or as an Invalidly Ambiguous Condition.

The Supreme Court "ha[s] required that if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" *South Dakota v. Dole*, 483 U.S. at 207 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

> There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.

*Pennhurst*, 451 U.S. at 17 (emphasis added). When Congress places conditions upon States receiving federal funds, the States' duty, the thing it gives up in exchange for the money, must be clear. *See Edelman v. Jordan*, 415 U.S. 651, 673–74 (1974); *Emps. of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279 (1973). There is a reason that the Chief Justice immediately followed his analysis by likening conditions on funds to contracts, where both parties must know and ascertain that to which they agree, with this:

> Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system. That system "rests on what might at first seem a counterintuitive insight, that 'freedom is enhanced by the creation of two governments, not one.'["] For this reason, "the Constitution has never been understood to confer upon Congress the ability to require the States to

> govern according to Congress'[s] instructions. Otherwise the two-government system established by the Framers would give way to a system that vests power in one central government, and individual liberty would suffer.

*NFIB*, 567 U.S. at 577 (internal citations and quotations omitted). States must be recognized as the sovereign governments that they are. Congress's use of an amorphous term like "indirectly" – and the Defendants' apparent desire to exploit States reeling from the pandemic and to micromanage their tax policies – disrespects States' sovereignty, mocks federalism, and injures Ohio.

Since "conditions on the receipt of federal funds must be unambiguous," *Tennessee*, 329 F. Supp. 3d at 622, the Tax Mandate is unconstitutional, as explained below.

To surmount the obstacle of unambiguity, Defendants must contend and show that the Tax Mandate is unambiguous – that is, that what Ohio is agreeing to give up in exchange for the ARPA funds is clear. If Defendants argue it is, in fact, clear, then they concede that Congress purported to grant the National Government the authority to prevent a recipient State like Ohio from lowering its State taxes. This would include an admission that the "directly, or indirectly" clause does, in fact, clearly incorporate the "money is fungible" principle, and as such, a recipient State's action to lower its State taxes would be viewed as being indirectly offset by ARPA funds, and hence, prohibited by the Tax Mandate.

The addition of "indirectly" to the Tax Mandate prohibition certainly does, as Ohio contends, appear broad in scope – broad enough to sweep in seemingly any connection that

is not direct.[5] In this scenario, receiving the ARPA funds would impose upon Ohio the National Government's tax policy preferences for States – which is apparently that taxes should not be lowered. If Ohio reduced its State taxes in a manner that reduced its State revenue in an amount up to $5.5 billion, the National Government's position would apparently be that Ohio offset those reductions with the ARPA funds, and would view that as a violation of the Tax Mandate. It could even move to seize those ARPA funds back from the State. If Defendants do not forswear this interpretation, then Defendants concede the very injurious usurpation of State sovereignty of which Ohio complains. If Defendants claim the Tax Mandate is unambiguous, and gives Defendants the power to prohibit recipient states from lowering their own taxes, this is not just "a 'power akin to undue influence.'" *NFIB*, 567 U.S. at 578 (quoting *Steward Mach. Co.*, 301 U.S. at 590), this would be *actual* undue influence.

On the other hand, if Defendants argue that ARPA's Tax Mandate does *not* prohibit recipient States like Ohio from lowering their taxes, then Defendants must identify language in the Tax Mandate that forecloses this possibility. Otherwise, this Court is left with the ambiguity created by two inconsistent interpretations of "indirectly," one that accords with common usage ("indirectly" means anything that is not direct and encompasses fungibility) and one that proposes an arbitrary limit on meaning ("indirectly" does not encompass fungibility). Two such conflicting views of the inherently ambiguous

---

[5] Black's Law Dictionary defines "indirect" like this: "A term almost always used in law in opposition to 'direct.'" Indirect, *Black's Law Dictionary* (11th ed. 2019). Thus, if a thing is indirect, it is anything that is not direct.

term "indirectly," and indeed, the very existence of this lawsuit, bear witness to the ambiguity of the Tax Mandate. Even assuming the Department of Treasury's interpretation is reasonable (which is questionable), this would not help. As the Sixth Circuit and this Court have recognized, "[a] statute is ambiguous if the language is susceptible to more than one reasonable interpretation." *Lowe v. Bowers (In re Nicole Gas Prod.)*, 916 F.3d 566, 574 (6th Cir. 2019) (internal citation, quotations and alterations omitted) (quoting *Hughes v. White*, 388 F. Supp. 2d 805, 818 (S.D. Ohio 2005)); *see also Action Grp. Int'l, LLC v. AboutGolf, Ltd.*, No. 3:10CV2132, 2011 U.S. Dist. LEXIS 46133, at *12–13 (N.D. Ohio April 29, 2011) (unpublished) ("A contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. Where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. In other words, he who speaks must speak plainly or the other party may explain to his own advantage." (internal citations omitted)).

Moreover, adopting an interpretive rule that "indirectly" does not include fungibility itself opens up further ambiguity: what precisely marks the boundaries of "fungibility"? If the state allots a portion of ARPA funds to a program that previously derived most of its funding from tax revenues, and those gross revenues have dropped because of state tax cuts, is the tax cut still protected, or is this a forbidden use of ARPA funds for tax cuts? And if allotting ARPA funds to areas where shortfalls in part derive from tax cuts is permissible, then does the Tax Mandate do anything other than forbid distribution of ARPA funds as tax refunds?

From Ohio's and *amici*'s viewpoint, what does the addition of "indirectly" encompass if not fungibility, an economics and accounting principle as old as money itself. But, if the Defendants contend that "indirectly" does not include fungibility, then what does "indirectly" mean? The ambiguity would be undeniable. Truly, Ohio "is unaware of the conditions or is unable to ascertain what is expected of it." *Pennhurst*, 451 U.S. at 17. An ambiguous condition violates the conditioning doctrine, as the Supreme Court and the Sixth Circuit have recognized. *Tennessee*, 329 F. Supp. 3d at 622.

In either event, regardless of which path Defendants choose to take, the Tax Mandate is invalid as either (1) coercion and compulsion destroying Ohio's sovereign right to decide its own tax policy, or (2) an impermissibly ambiguous rule. In either event, the Tax Mandate is unconstitutional.

## CONCLUSION

To be sure, Congress enjoys a wide lane to spend and effectuate policy for the National Government – and even to set certain limited conditions on the States' acceptance of funds. But here, Congress went too far. For these reasons, and others outlined by the State of Ohio in its Motion and Complaint, *amici* ACLJ and Certain Members of Congress urge this Court to grant Ohio's motion and enjoin enforcement of ARPA's Tax Mandate.

April 9, 2021.                                     Respectfully submitted,

*/s/ R. Jason Howard*
_____

R. JASON HOWARD*                    JAY ALAN SEKULOW**
Howard Law Office                        *Counsel of Record*
Claypool Building, Suite 304          STUART J. ROTH**
4130 Linden Avenue                     ANDREW J. EKONOMOU**
Dayton, Ohio 45432-3033             JORDAN SEKULOW**

*Local Counsel for Amici Curiae*

BENJAMIN P. SISNEY*
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel.: 202-546-8890
Email: sekulow@aclj.org
bsisney@aclj.org

*Counsel for Amici Curiae*

*Admitted to practice before this Court*
** Not admitted to practice before this Court*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2020, the foregoing document was electronically transmitted to the Clerk of Court using the ECF System for filing and was transmitted to those individuals receiving Notice of Electronic Filings in this matter.

*/s/ R. Jason Howard*

R. Jason Howard
Howard Law Office
Claypool Building, Suite 304
4130 Linden Avenue
Dayton, Ohio 45432-3033

*Local Counsel for Amici Curiae*