**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| STATE OF OHIO,<br><br>Plaintiff,<br>v.<br><br>JANET YELLEN, in her official capacity as Secretary of the Treasury; RICHARD K. DELMAR, in his official capacity as acting inspector general of the Department of the Treasury; and U.S. DEPARTMENT OF THE TREASURY<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:21-cv-181<br><br>JUDGE DOUGLAS R. COLE |

---

**BRIEF OF *AMICUS CURIAE* NATIONAL TAXPAYERS UNION FOUNDATION IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

Christopher A. Holecek (0040840)
Wegman Hessler LPA
6055 Rockside Woods Blvd., Suite 200
Cleveland, OH 44131
Telephone: 216.642.3342
Fax: 216.642.8826
Email: caholecek@wegmanlaw.com

Joseph D. Henchman (pro hac vice pending)
National Taxpayers Union Foundation
122 C Street N.W., Suite 650
Washington, DC 20001
Telephone: 202.766.5019
Email: jbh@ntu.org
*Attorneys for Amicus Curiae National Taxpayers Union Foundation*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... 1

TABLE OF AUTHORITIES .......... 2

CORPORATE DISCLOSURE STATEMENT .......... 4

INTEREST OF *AMICUS CURIAE* .......... 5

ARGUMENT .......... 6

I. THE CLAWBACK PROVISION IS EITHER VOID FOR VAGUENESS OR UNCONSTITUTIONALLY COERCIVE. .......... 6

A. The Provision is So Ambiguous That Its Enforcement Will Be Arbitrary. .......... 7

B. The Term "Indirectly" In The Statute Is An Unconstitutionally Intrusive Condition on State Governments. .......... 10

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases**

*Audette v. Sullivan*, 19 F.3d 254 (6th Cir. 1994) .......... 11

*Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon*, 515 U.S. 687 (1995) ... 11

*Ball v. Kasich*, 2017 WL 3172778 (S.D. Ohio Jul. 25, 2017) .......... 5

*Connally v. General Construction Co.*, 269 U.S. 385 (1926) .......... 10

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .......... 10

*Jordan v. De George*, 341 U.S. 223 (1951) .......... 10

*Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298 (2012) .......... 11

*National Ass'n of Greeting Card Publishers v. U.S. Postal Service*, 462 U.S. 810 (1983).......... 11

*National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) .......... 12, 13

*New York v. U.S. Department of Education*, 903 F.2d 930 (2nd Cir. 1990) .......... 11

*New York v. United States*, 505 U.S. 144 (1992) .......... 12

*Pennhurst State School and Hospital v. Haldeman*, 451 U.S. 1 (1981) .......... 10

*Retail Clerks v. Schermerhorn*, 373 U.S. 746 (1963) .......... 11

*Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204 (2018) .......... 10

*U.S. v. Michigan*, 940 F.2d 143 (6th Cir. 1991) .......... 5

*United States v. Williams*, 553 U.S. 285 (2008) .......... 10

**Statutes**

42 U.S.C. § 602(c)(2)(A) .......... 6

42 U.S.C. § 602(e) .......... 6

## Other Authorities

Alan Rappeport, "A Last Minute Add to Stimulus Bill Could Restrict State Tax Cuts," *New York Times* (Mar. 12, 2021), https://www.nytimes.com/2021/03/12/us/politics/biden-stimulus-state-tax-cuts.html ..... 7

Associated Press, "California delays tax break for businesses because of COVID-19 relief bill," Mar. 19, 2021, https://ktla.com/news/california/covid-19-relief-bill-delays-tax-break-for-california-businesses/ ..... 8

Bethany Rodgers, "Advocates urge Utah's governor to veto tax cut to make sure the state doesn't lose COVID-19 relief funds," *Salt Lake Tribune*, Mar. 12, 2021, https://www.sltrib.com/news/politics/2021/03/12/advocates-urge-utahs/ ..... 8

BLACK'S LAW DICTIONARY, 10TH ED. 2014 ..... 11

Holly Michels, "It's unclear if federal COVID-19 aid money could affect proposed Montana tax cuts," *Helena Independent Record*, Mar. 16, 2021, https://helenair.com/news/state-and-regional/govt-and-politics/its-unclear-if-federal-covid-19-aid-money-could-affect-proposed-montana-tax-cuts/article_0d0f3e01-6499-5a57-bd67-e86672d8fec7.html ..... 8

Ian Richardson, "Iowa Senate votes to shift mental health funding to state, eliminate 'backfill' payments to cities," *Des Moines Register*, Apr. 7, 2021, https://www.desmoinesregister.com/story/news/politics/2021/04/07/iowa-senate-mental-health-funding-changes-passes-wide-ranging-property-income-tax-bill-backfill ..... 8

Joe Bishop-Henchman, "NTU Requests Clarification on State Tax Provision in American Rescue Plan," Apr. 7, 2021, https://www.ntu.org/foundation/detail/ntu-requests-clarification-on-state-tax-provision-in-american-rescue-plan ..... 9

Letter from U.S. Treasury Department to Arizona Attorney General Mark Brnovich (Mar. 23, 2021), https://home.treasury.gov/news/press-releases/jy0075 ..... 8

National Association of State Budget Officers, *The Fiscal Survey of States Fall 2020*, https://www.nasbo.org/reports-data/fiscal-survey-of-states ..... 12

Nicholas Johnson, "Rescue Plan Protects Against Using Federal Dollars to Cut State Taxes," CBPP (Mar. 11, 2021), https://www.cbpp.org/blog/rescue-plan-protects-against-using-federal-dollars-to-cut-state-taxes ..... 7

TheLaw.com Dictionary, Indirect, https://dictionary.thelaw.com/indirect/ ..... 11

U.S. Department of the Treasury, "Statement on State Fiscal Recovery Funds and Tax Conformity," Apr. 7, 2021 ..... 9

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Corporate Disclosure Statement requirement in Local Civil Rule 7.1.1, *Amicus Curiae* National Taxpayers Union Foundation discloses the following:

1. Is said a parent, subsidiary, or other affiliate of publicly owned corporations? No.
2. Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome? No.

*/s/ Joseph D. Henchman*
Joseph D. Henchman (pro hac vice pending)
*Attorney for Amicus Curiae National Taxpayers Union Foundation*

## INTEREST OF *AMICUS CURIAE*

The National Taxpayers Union Foundation was founded in 1973, and is a non-partisan research and educational organization dedicated to showing Americans how taxes, government spending, and regulations affect them. NTUF advances principles of limited government, simple taxation, and transparency on both the state and federal levels. NTUF's Taxpayer Defense Center advocates for taxpayers in the courts, producing scholarly analyses and engaging in litigation and *amicus curiae* briefs upholding taxpayers' rights, challenging administrative overreach by tax authorities, and guarding against unconstitutional burdens on interstate commerce.

*Amicus* has written extensively on the provision of federal law at issue in this case, as part of its broader work testifying and writing on the interplay between federal powers and state tax policy. *Amicus* also communicates regularly and extensively with federal and state policymakers, producing research and analysis including continuous legal analysis of this provision and ongoing developments surrounding it. This background places *Amicus* in a position to provide "information [that] is timely, useful or otherwise necessary to the administration of justice." *Ball v. Kasich*, 2017 WL 3172778 (S.D. Ohio Jul. 25, 2017), *citing U.S. v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991).

Because this Court's decision may be looked to as authority by the many courts considering this issue, and because any decision will significantly impact taxpayers, state tax policy, and tax administration, *Amicus* has an institutional interest in this Court's ruling.

## ARGUMENT

### I. THE CLAWBACK PROVISION IS EITHER VOID FOR VAGUENESS OR UNCONSTITUTIONALLY COERCIVE.

On March 11, 2021, President Biden signed the American Rescue Plan Act of 2021 (ARPA) into law, and Subtitle M, Section 9901 amends 42 U.S.C. § 602(c)(2)(A) to read:

> In general.—A State or territory shall not use the funds provided under this section or transferred pursuant to section 603(c)(4) to either directly or indirectly offset a reduction in the net tax revenue of such State or territory resulting from a change in law, regulation, or administrative interpretation during the covered period that reduces any tax (by providing for a reduction in a rate, a rebate, a deduction, a credit, or otherwise) or delays the imposition of any tax or tax increase.

42 U.S.C. § 602(c)(2)(A). States which violate the provision "shall be required to repay to the Secretary an amount equal to the amount of funds used in violation" calculated as the "lesser of (1) the amount of the applicable reduction to net tax revenue attributable to such violation; and (2) the amount of funds received by such State or territory pursuant to a payment made under this section or a transfer made [to local governments]." 42 U.S.C. § 602(e).

The provision is capable of multiple meanings, such that an honest person (or state government) attempting to abide by its terms is necessarily guessing at its meaning. This has result in paralyzing state legislative action for fear of violating the provision, undermining ARPA's purpose of action to provide pandemic relief. This chilling effect of the ARPA provision, coupled with the lack of legislative history and the limitations of any future Treasury guidance, means one of two things. Either the provision is so capable of multiple meanings that it is void for vagueness, or is an exercise of such great power by Congress as to deprive states of independent action on their tax policies for five years. The broad sweep of the term "indirectly," coupled with the inherent fungibility of money in state budgets, means that any state that accepts ARPA aid (and the funds are of such size that no state will be to explain why its citizens must take on the debt to pay for

ARPA but say no to their share of the allocations) is effectively surrendering the ability to cut taxes. Because the former result violates the Due Process Clause and the latter result violates the Tenth Amendment, this Court should hold the ARPA provision to be unconstitutional.

**A. The Provision is So Ambiguous That Its Enforcement Will Be Arbitrary.**

The ARPA provision is capable of at least three reasonable readings.

Some read it as a complete ban on state tax cuts through 2024. For example, the *New York Times* reported Senator Joe Manchin (D-WV) as pushing for the language because he believes "states should not be cutting taxes at a time when they need more money to combat the virus. He urged states to postpone their plans to cut taxes." Alan Rappeport, "A Last Minute Add to Stimulus Bill Could Restrict State Tax Cuts," *New York Times* (Mar. 12, 2021), https://www.nytimes.com/2021/03/12/us/politics/biden-stimulus-state-tax-cuts.html.

Some read it as allowing states to cut taxes but only on condition of surrendering aid dollar-for-dollar. For example, Nicholas Johnson of the Center on Budget & Policy Priorities (CBPP) writes, "It says they can't use federal dollars to do that, either directly or indirectly. If a state chooses to enact a net tax cut, it will forgo the equivalent amount of federal aid provided through the Act's Coronavirus State Fiscal Recovery Fund." Nicholas Johnson, "Rescue Plan Protects Against Using Federal Dollars to Cut State Taxes," CBPP (Mar. 11, 2021), https://www.cbpp.org/blog/rescue-plan-protects-against-using-federal-dollars-to-cut-state-taxes.

A third reading was provided by U.S. Treasury Department on March 23, 2021, in a letter to Arizona Attorney General Mark Brnovich. Treasury stated that the provision "simply provides that funding received under the Act may not be used to offset a reduction in net tax revenue resulting from certain changes in state law. If States lower certain taxes but do not use funds under the Act to offset those cuts—for example, by replacing the lost revenue through other means—the

limitation in the Act is not implicated." Letter from U.S. Treasury Department to Arizona Attorney General Mark Brnovich (Mar. 23, 2021), https://home.treasury.gov/news/press-releases/jy0075.

This lack of clarity has had a chilling effect on state legislative sessions currently in progress. *See, e.g.*, Associated Press, "California delays tax break for businesses because of COVID-19 relief bill," Mar. 19, 2021, https://ktla.com/news/california/covid-19-relief-bill-delays-tax-break-for-california-businesses/ ("[A] bill that would do that has been delayed because of a provision in the latest federal coronavirus relief bill that says states can't use relief money to cut taxes."); Ian Richardson, "Iowa Senate votes to shift mental health funding to state, eliminate 'backfill' payments to cities," *Des Moines Register*, Apr. 7, 2021, https://www.desmoinesregister.com/story/news/politics/2021/04/07/iowa-senate-mental-health-funding-changes-passes-wide-ranging-property-income-tax-bill-backfill ("Iowa's legislative leaders have indicated they're still seeking clarification on what the new federal funding means for their ability to cut taxes this year."); Holly Michels, "It's unclear if federal COVID-19 aid money could affect proposed Montana tax cuts," *Helena Independent Record*, Mar. 16, 2021, https://helenair.com/news/state-and-regional/govt-and-politics/its-unclear-if-federal-covid-19-aid-money-could-affect-proposed-montana-tax-cuts/article_0d0f3e01-6499-5a57-bd67-e86672d8fec7.html ("Gianforte said his administration is still trying to get details on the language in the ARPA and what it means for his tax cut plans."); Bethany Rodgers, "Advocates urge Utah's governor to veto tax cut to make sure the state doesn't lose COVID-19 relief funds," *Salt Lake Tribune*, Mar. 12, 2021, https://www.sltrib.com/news/politics/2021/03/12/advocates-urge-utahs/ ("Utah advocates are warning that new state tax cuts could put at risk millions of dollars in federal coronavirus aid and are urging Gov. Spencer Cox to veto the only tax relief proposal he hasn't yet signed.").

In early April 2021, NTUF sent a letter to Treasury Secretary Janet Yellen requesting guidance interpreting the ARPA provisions, with eight specific recommendations. *See* Joe Bishop-Henchman, "NTU Requests Clarification on State Tax Provision in American Rescue Plan," Apr. 7, 2021, https://www.ntu.org/foundation/detail/ntu-requests-clarification-on-state-tax-provision-in-american-rescue-plan. We requested (1) Treasury should make clear the baseline from which revenue reductions will be calculated, such as the pandemic revenue low point, excluding tax cuts that do not cut revenue below that; (2) Treasury should make clear who will be making the determination and how, such as by using certifications from state authorities as the mechanism of determination; (3) we urged that previously enacted, announced, or introduced state tax changes be excluded; (4) we asked that changes designed to conform to federal law be excluded; (5) we asked that state tax cuts that further ARPA objectives, such as those that address unemployment or shore up small businesses, be excluded; (6) we asked that court-ordered refunds or reductions, such as if a state tax is declared unconstitutional, be excluded; (7) we asked that Treasury allow states to receive advance OK that their tax cut is permissible, and that Treasury provide a dispute resolution mechanism; and (8) we asked Treasury to state generally that "directly or indirectly" is to be narrowly construed. On April 7, the Treasury Department issued a statement that state tax changes that conform to federal law would be excluded (essentially the fourth of the above requests). *See* U.S. Department of the Treasury, "Statement on State Fiscal Recovery Funds and Tax Conformity," Apr. 7, 2021, https://home.treasury.gov/news/press-releases/jy0113 ("Regardless of the particular method of conformity and the effect on net tax revenue, Treasury views such changes as permissible under the offset provision.").

Absent a narrowing interpretation by the courts or by Treasury guidance, the ARPA provision forces people "of common intelligence [to] necessarily guess at its meaning and differ

as to its application," which thereby "violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). The law neither enumerates the practices that are required or prohibited, nor details the procedures to be followed by those responsible for enforcing the provision. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 304 (2008). As a result, the statute deprives ordinary people of the "fair notice of the conduct a statute prescribes" and fails "to guard[] against arbitrary or discriminatory law enforcement." *Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204, 1212 (2018). *See also Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis."). Invalidating vague laws not only upholds the Due Process Clause, it upholds the separation of powers. *See, e.g.*, *Sessions*, 138 S. Ct. at 1228 (Gorsuch, J., concurring in the judgment), *citing Jordan v. De George*, 341 U.S. 223, 242 (1951) (Jackson, J., dissenting) ("Under the Constitution, the adoption of new laws restricting liberty is supposed to be a hard business, the product of an open and public debate among a large and diverse number of elected representatives. Allowing the legislature to hand off the job of lawmaking risks substituting this design for one where legislation is made easy, with a mere handful of unelected judges and prosecutors free to "condem[n] all that [they] personally disapprove and for no better reason than [they] disapprove it."). *See also Pennhurst State School and Hospital v. Haldeman*, 451 U.S. 1, 17 (1981) ("Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.").

**B. The Term "Indirectly" In The Statute Is An Unconstitutionally Intrusive Condition on State Governments.**

What actions *indirectly* "offset a reduction of net tax revenue…or delays the imposition of any tax or tax increase"? "Indirect" is a broad term, with "direct and indirect" together

encompassing all. *See, e.g.*, *Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon*, 515 U.S. 687, 704 (1995) ("Congress intended 'take' to apply broadly to cover indirect as well as purposeful actions...in the broadest possible manner to include every conceivable way in which a person can take or attempt to take….") (cleaned up); *National Ass'n of Greeting Card Publishers v. U.S. Postal Service*, 462 U.S. 810, 827 (1983) ("[A]ll costs of the Postal Service, both 'direct' and 'indirect'."); BLACK'S LAW DICTIONARY, 10TH ED. 2014 at 423 ("Indirect cost: A cost that is not specific to the production of a particular good or service but that arises from production activity in general, such as overhead allocations for general and administrative activities."); TheLaw.com Dictionary, Indirect, https://dictionary.thelaw.com/indirect/ ("A term almost always used in law in opposition to 'direct' though not the only antithesis of the latter word….").

Money is inherently fungible, especially funds in state budgets. States estimate their revenues and expenses and general funds from all sources are used to support all programs, and the allocation of expenses to particular sources is mainly a post-hoc accounting exercise. *See, e.g.*, *New York v. U.S. Department of Education*, 903 F.2d 930, 934 (2nd Cir. 1990) ("Considering this budget process and the fungible nature of money in general, it would be unreasonable to require the Secretary to identify a particular source of funds that would have supported Promotional Gates in the absence of the supplemental Chapter 1 appropriation."). The proliferation of "maintenance of effort" conditions on federal funds recognizes this fact, setting minimum funding obligations to police the instinct to use new funds for current activities and thereby free up existing funds for other purposes. *See, e.g.*, *Audette v. Sullivan*, 19 F.3d 254, 256 (6th Cir. 1994) ("In passing the maintenance-of-effort provision, Congress intended to establish a minimum below which AFDC benefits would not fall."). *Cf. Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298, 334-35 (2012) (Breyer, J., dissenting), *citing Retail Clerks v. Schermerhorn*, 373 U.S. 746, 753

(1963) ("In any event, we have made clear in other cases that money is fungible. Whether a particular expenditure was funded by regular dues or the special assessment is 'of bookkeeping significance only rather than a matter of real substance.'").

Absent a narrowing interpretation by the courts or by Treasury guidance, the ARPA provision attempts to prohibit all state tax cuts, since any state that accepts ARPA funds and cuts taxes can be said to be "directly or indirectly" using those funds to cut taxes. If the statute merely said "directly" that might be a limiting factor, prohibiting direct dollar-for-dollar or simultaneous in time acceptance of ARPA funds and cutting of taxes. "Indirectly" is no limiting factor. With the size of the federal aid so massive[1] that no state will be able to turn it down (given that their citizens are also federal taxpayers who will bear the burden of paying for the future debt, making it politically difficult to not take advantage of the immediate benefits), the condition attached to the federal aid—cede to Congress your power to cut taxes for five years—is unconstitutionally coercive. *See New York v. United States*, 505 U.S. 144, 162 (1992) ("While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the

[1] ARPA provides $195 billion in aid to state governments and $130 billion in aid to local governments. The state portion amounts to 22 percent of all states' annual general fund budgets ($892.9 billion in Fiscal 2021) and 9 percent of all states' total fund budgets ($2.26 trillion); the combined state and local aid amounts to 36 percent of general fund budgets and 14 percent of all funds budgets. *See* National Association of State Budget Officers, *The Fiscal Survey of States Fall 2020* at 13, https://www.nasbo.org/reports-data/fiscal-survey-of-states. *Cf. Sebelius*, 567 U.S. at 582 ("The threatened loss of over 10 percent of a State's overall budget, in contrast, is economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion.").

States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."). While Congress may under some circumstances condition the receipt of new federal funds, restricting past and future actions that "indirectly" use federal funds amounts to "Congress directly command[ing] a State to regulate or indirectly coerces a State to adopt a federal regulatory system as its own" in violation of the Tenth Amendment. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 578 (2012).

## CONCLUSION

For the foregoing reasons, *Amicus* respectfully requests that this Court grant the plaintiff's motion.

Respectfully Submitted,


*/s/ Joseph D. Henchman*
Joseph D. Henchman (pro hac vice pending)
National Taxpayers Union Foundation
122 C Street N.W., Suite 650
Washington, DC 20001
Telephone: 202.766.5019
Email: jbh@ntu.org

*/s/ Christopher A. Holecek*
Christopher A. Holecek (0040840)
Wegman Hessler LPA
6055 Rockside Woods Blvd., Suite 200
Cleveland, OH 44131
Telephone: 216.642.3342
Fax: 216.642.8826
Email: caholecek@wegmanlaw.com
*Attorneys for Amicus Curiae National Taxpayers Union Foundation*


Dated: April 13, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ Joseph D. Henchman*
Joseph D. Henchman (pro hac vice pending)
National Taxpayers Union Foundation
122 C Street N.W., Suite 650
Washington, DC 20001
Telephone: 202.766.5019
Email: jbh@ntu.org