# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| *Plaintiff,* | : | |
| | : | Case No. 1:21-cv-181 |
| v. | : | |
| | : | Judge Douglas R. Cole |
| JANET YELLEN, in her official | : | |
| capacity as Secretary of the | : | |
| Treasury; RICHARD K. DELMAR, | : | |
| in his official capacity as acting | : | |
| inspector general of the Department | : | |
| of Treasury; and U.S. | : | |
| DEPARTMENT OF THE | : | |
| TREASURY, | : | |
| *Defendants.* | : | |

---

## COMBINED REPLY IN SUPPORT OF PERMANENT INJUNCTION AND DECLARATORY JUDGMENT, AND MEMORANDUM OPPOSING DISMISSAL

---

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

   I.      The Secretary's standing arguments all fail. ................................. 1

   II.     Ohio prevails on the merits. ........................................................ 9

      A.     The Tax Mandate violates the Spending Clause. ................................... 9

         1.    The Tax Mandate is unconstitutionally ambiguous. ......................... 9

         2.    The Tax Mandate fails under the coercion test. ............................. 16

      B.     The Tax Mandate violates the Tenth Amendment. ............................. 19

   III.    Ohio is entitled to injunctive or declaratory relief. .................................... 19

CONCLUSION ........................................................................................... 20

CERTIFICATE OF SERVICE ...................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018) ................................................................ 2

*Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy,*
    548 U.S. 291 (2006) .................................................................. 12

*Baptist Mem'l Hosp. – Golden Triangle, Inc. v. Azar,*
    956 F.3d 689 (5th Cir. 2020) ....................................................... 11

*Barnes v. E-Systems,*
    501 U.S. 1301 (1991) .................................................................. 3

*Blum v. Bacon,*
    457 U.S. 132 (1982) .................................................................. 11

*Carey v. Piphus,*
    435 U.S. 247 (1978) ................................................................... 2

*CFTC v. Erskine,*
    512 F.3d 309 (6th Cir. 2008) ....................................................... 12

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
    467 U.S. 837 (1984) ............................................................. 13, 15

*Children's Hosp. Ass'n of Tex. v. Azar,*
    933 F.3d 764 (D.C. Cir. 2019) ..................................................... 11

*City of Cleveland v. Ohio,*
    508 F.3d 827 (6th Cir. 2007) ....................................................... 11

*Cleveland Branch, NAACP v. City of Parma,*
    263 F.3d 513 (6th Cir. 2001) ........................................................ 5

*Cohens v. Virginia,*
    6 Wheat. 264 (1821) ................................................................... 9

*Coyle v. Smith,*
    221 U.S. 559 (1911) .................................................................. 19

*Doe v. BlueCross BlueShield of Tenn., Inc.,*
    926 F.3d 235 (6th Cir. 2019) ....................................................... 15

*Doe v. Congress of the United States,*
    891 F.3d 578 (6th Cir. 2018) ................................................................. 8

*FEC v. Akins,*
    524 U.S. 11 (1998) ............................................................................... 2

*Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.,*
    807 F.3d 806 (6th Cir. 2015) ................................................................. 7

*Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.,*
    959 F.3d 178 (5th Cir. 2020) ............................................................... 18

*Haight v. Thompson,*
    763 F.3d 554 (6th Cir. 2014) ............................................................... 12

*Hampton v. Bulholtz,*
    No. 20-3480, 2021 U.S. App. LEXIS 1926 (6th Cir. Jan. 22, 2021) ....... 6

*Harris v. Olszewski,*
    442 F.3d 456 (6th Cir. 2006) ............................................................... 11

*Irving Indep. Sch. Dist. v. Tatro,*
    468 U.S. 883 (1984) ........................................................................... 11

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
    567 U.S. 298 (2012) ............................................................................. 1

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................. 7

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ......................................................................... 2, 9

*Merck Sharp & Dohme Corp. v. Albrecht,*
    139 S. Ct. 1668 (2019) ........................................................................ 6

*Murphy v. NCAA,*
    138 S. Ct. 1461 (2018) ...................................................................... 19

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012) ................................................................ 8, 17, 18

*Obama for Am. v. Husted,*
    697 F.3d 423 (6th Cir. 2012) ................................................................. 2

*Ohio v. EPA*,
   969 F.3d 306 (6th Cir. 2020) .............................................................. 5, 6

*Ohio v. Raimondo*,
   2021 U.S. App. LEXIS 15035 (6th Cir. May 18, 2021)............................ 7

*Online Merchs. Guild v. Cameron*,
   995 F.3d 540, 2021 U.S. App. LEXIS 12825 (6th Cir. Apr. 29, 2021) ................... 4

*Petit v. U.S. Dep't of Educ.*,
   675 F.3d 769 (D.C. Cir. 2012) ........................................................... 11

*Robertson v. Allied Sols., LLC*,
   902 F.3d 690 (7th Cir. 2018) .............................................................. 6

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ........................................................................... 5

*School District of City of Pontiac v. Secretary of U.S. Department of Education*,
   584 F.3d 253 (6th Cir. 2009) (*en banc*) ......................................... 12, 20

*Snider v. Creasy*,
   728 F.2d 369 (6th Cir. 1984) ............................................................ 11

*Spencer v. Kemna*,
   523 U.S. 1 (1998) ............................................................................... 5

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................. 5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................... 4

*Tex. Educ. Agency v. Usde*,
   992 F.3d 350 (5th Cir. 2021) ............................................................ 10

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .............................................................. 3

*United States v. Miami Univ.*,
   294 F.3d 797 (6th Cir. 2002) ............................................................ 11

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014) ......................................................................... 12

*Va. Dep't of Educ v. Riley*,
106 F.3d 559 (4th Cir. 1997) (*en banc*) .................................................................. 10

*Vitolo v. Guzman*,
2021 U.S. App. LEXIS 16101 (6th Cir. May 27, 2021)........................................... 1

*Westside Mothers v. Olszewski*,
454 F.3d 532 (6th Cir. 2006) ................................................................................. 11

**Statutes**

86 Fed. Reg. 26786 (May 17, 2021) ......................................................*passim*

42 U.S.C. §802.......................................................................................... 3, 8

**Other Authorities**

*Florida v. HHS*, No. 3:10-cv-91, Second Am. Compl., Doc. 148 (N.D.
Fla.) ...................................................................................................... 20

*School District of the City of Pontiac v. Spellings*, No. 2:05-cv-71535,
Compl., R.1-2 (E.D. Mich.) ................................................................... 20

Congress passed the American Rescue Plan Act, in part, to help the American people and the States recover from pandemic-caused economic devastation. But Congress included provisions that violate the Constitution so flagrantly, they appear designed to upend our constitutional order. *See, e.g.*, *Vitolo v. Guzman*, 2021 U.S. App. LEXIS 16101, at *11–24 (6th Cir. May 27, 2021). The Tax Mandate is one such provision. The Secretary insists that is not so, and that Ohio's arguments are "meritless." Sec. Br., R.45, PageID#720. That is a strange claim to make after the Court's likelihood-of-success finding. And the claim is belied by the Secretary's brief, which barely engages with Ohio's arguments. Ohio prevails in this case as a matter of law. The Court should award it both declaratory and injunctive relief.

## I.  The Secretary's standing arguments all fail.

The Secretary begins her defense by pleading with the Court not to decide the case. She says that Ohio now lacks Article III standing even if (as this Court held) Ohio had standing when it first sued. In other words, the Secretary argues that the case is now moot. But "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotation omitted). Thus, as "long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307–08 (quotation omitted). Ohio has such an interest. The Court should therefore reject the Secretary's standing arguments.

**A.**  Begin by returning to this Court's earlier standing analysis. When a party is denied or deprived of a substantive right, it suffers an injury in fact for purposes of

1

Article III standing. *See, e.g., FEC v. Akins*, 524 U.S. 11, 21 (1998); *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Indeed, the deprivation of a constitutional entitlement causes *irreparable* injury. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). As this Court already observed, the ambiguity in the Tax Mandate denies Ohio the clarity to which it is constitutionally entitled. That denial constitutes an injury. And the injury arose "immediately" upon the Mandate's enactment. Op., R.36, PageID#549. At that moment, Ohio was injured by having to "determine how to respond to the offer of funding under the cloud of an ambiguous term." *Id.*, PageID#550. (As an aside, it makes no difference whether Ohio could have accepted the offer at the moment the Rescue Plan passed. *See* Sec. Br., R.45, PageID#726. The State's opportunity to accept was either actual or imminent, and so the injury caused by having to decide how to respond to the offer was either actual or imminent, too. And an imminent injury, just like an actual one, satisfies Article III. *See Massachusetts v. EPA*, 549 U.S. 497, 521 (2007). The Secretary does not argue otherwise.)

All this shows that Ohio was injured when it sued. The remaining question is whether the Mandate continues to injure Ohio. The answer is "yes." It is undisputed that Ohio submitted its certification to the Secretary, thereby accepting Rescue Plan funds and subjecting itself to the Tax Mandate. *See* Murnieks Decl., R.38-1, PageID #603. While Ohio no longer has to decide whether to accept the offer, it *does* have to decide whether and how to spend the money, and its legislature and administrative officers *do* have to make budgeting decisions, set tax policy, and interpret State tax

2

laws. But the Mandate is just as ambiguous today as it was when Ohio sued. And as a result, Ohio and its officials must make these spending, budgeting, policy, and interpretive decisions without any clarity regarding which decisions violate the Mandate's prohibition. Thus, the Mandate's lack of clarity continues to frustrate Ohio's exercise of sovereign prerogatives, including by interfering with the State's exercise of its financial and legislative authority. That interference is an injury, *Barnes v. E-Systems*, 501 U.S. 1301, 1304 (1991) (Scalia, J., in chambers)—an injury worsened by the fact that Ohio is in the middle of its biennial budgeting process, Op., R.36, Page ID#553–54—as are intrusions on State authority more generally, *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015), *aff'd* 136 S. Ct. 2271 (2016).

If anything, the injury is worse today than ever before. First, by submitting the certification, Ohio agreed to comply with a provision in the Rescue Plan that requires the State to provide the Secretary with a "detailed accounting" that proves compliance with the Mandate. 42 U.S.C. §802(d)(2). The Interim Rule lays out the complex process by which States are expected to provide this detailed accounting. *See* Coronavirus State and Local Fiscal Recovery Funds, 86 Fed. Reg. 26786, 26807–810 (May 17, 2021). If, as Ohio alleges, the Mandate is unconstitutional, then Ohio is entitled not to engage in this federally directed monitoring of Tax Mandate compliance. Making Ohio do so anyway injures the State by (further) wrongfully intruding on the State's exercise of its financial and legislative authority. *Barnes*, 501 U.S. at 1304; *Texas*, 809 F.3d at 153. The federally directed monitoring additionally injures Ohio by forcing it to allocate scarce resources to a task it is entitled not to perform.

3

*See Online Merchs. Guild v. Cameron*, 995 F.3d 540, 2021 U.S. App. LEXIS 12825, *13 (6th Cir. Apr. 29, 2021). Finally, the prospect of future enforcement is now sufficiently "imminent" to constitute an injury in fact. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 162, 164 (2014). While the Court previously found the threat of enforcement to be *non*–imminent, two events change the analysis. The first is Ohio's acceptance of funds, which subjects it to the Tax Mandate. The second is the Secretary's commitment to enforcement—a commitment any reasonable onlooker can glean from the Interim Rule's aggressive system of accounting and monitoring.

Ohio suffered, and will continue to suffer, injuries fairly traceable to the Tax Mandate. Relief in this case will redress those injuries. Ohio thus has standing.

**B.** The Secretary offers several counterarguments, none persuasive. She first insists that, because Ohio accepted Rescue Plan funds, the State is no longer injured by having to determine whether to accept a deal comprising ambiguous terms. Sec. Br., R.45, PageID#727. Under the Secretary's heads-I-win–tails-you-lose approach, States lack standing to challenge Spending Clause conditions that they have not accepted *and also* lack standing to challenge conditions that they have accepted. The Court should reject the Secretary's argument because, as just discussed, the Mandate's ambiguity continues to injure Ohio. *See also* Op., R.36, PageID#550 ("Ohio could claim that it is injured upon sending its certification to the Secretary. After all, it is the certification that binds Ohio to the conditions—including the Tax Mandate that Ohio maintains is unconstitutional."). Moreover, the Secretary's argument has no bearing on the other just-discussed harms that the Mandate imposes now that

4

Ohio has accepted the funds. Because standing need not rest on the exact same injury at all stages of the case, *see Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998), any new injuries arising at the moment of certification bolster Article III standing now that they exist.

The Secretary next argues that the Interim Rule "moots" Ohio's "supposed ambiguity-as-injury claim" by providing the needed clarity. Sec. Br., R.45, PageID#727. Courts place a "heavy burden" on parties arguing mootness. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001). And, in trying to meet that burden, the Secretary assumes the (wrong) answer to the merits question whether the Interim Rule can or does provide the clarity needed to resuscitate the otherwise-unconstitutional Mandate. *See below* 9–16; Ohio Br., R.38, PageID#587–93. The Secretary cannot defeat standing by assuming she wins on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Further, even if the Interim Rule clarifies the Mandate, the Interim Rule is not etched in stone. While it is "final" in the sense that it binds those to whom it apples, *see* Sec. Br., R.45, PageID #734, the comment period remains open, meaning the Treasury is *actively* considering whether to make changes (unless the comment period is a sham). Further, because agencies can always repeal and replace their rules, *see Rust v. Sullivan*, 500 U.S. 173, 186 (1991), the Treasury will remain free to change the Interim Rule going forward. Further still, "given the recent proliferation of nationwide injunctions," it remains possible that the Interim Rule will cease to bind anyone. *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020). Indeed, in *Ohio v. EPA*, the Sixth Circuit specifically held that when a new regulation repeals an old one, the possibility of the new

regulation's being enjoined kept alive a challenge to the old regulation. *Id.* In sum, the Interim Rule *does not* provide the needed clarity (a merits issue), and the Interim Rule (because it can be changed or enjoined) could not *definitively* remove any ambiguity from the Mandate regardless. Thus, a ruling enjoining the Mandate will provide the States with *some* "effectual relief," defeating the mootness argument.

If the Secretary is suggesting that the challenge to the statute is moot because the Interim Rule is now what governs, she is wrong. A federal "agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019) (quotation omitted). Thus, if the Court enjoins the Tax Mandate or declares it unconstitutional, the defendants would be barred from enforcing the Mandate against Ohio through the Interim Rule. And that would be "effectual relief."

The Secretary raises some procedural challenges to standing also, but they fare no better. For example, she asserts that the Court found Article III standing based on "a theory absent from Ohio's complaint." Sec. Br., R.45, PageID#726 (citing Op., R.36, PageID#553). But Ohio did not need to allege a "theory" of standing in its complaint—it needed to allege *facts* sufficient to allow a plausible inference of standing. *See Hampton v. Bulholtz*, No. 20-3480, 2021 U.S. App. LEXIS 1926, at *4 (6th Cir. Jan. 22, 2021); *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695 (7th Cir. 2018). Ohio did that. It quoted the Tax Mandate, the text of which establishes the provision's ambiguity, thereby establishing that Congress injured Ohio by denying it the clear

6

terms to which it was entitled. Compl., R.1, PageID#5. Ohio also alleged that it had no choice but to accept the money being offered given economic circumstances that all parties agree are dire. *Id.*, PageID#6–9; 86 Fed. Reg. at 26786–87. That suffices to permit the inference that the State was injured by being illegally coerced into acquiescing to federal conditions. For good measure, Ohio specifically alleged that the Mandate injured it by "unconstitutionally intruding on the State's sovereign authority, by interfering with the State's orderly management of its fiscal affairs, and by subjecting the State to the risk that it may be made to return funding to the federal government." *Id.*, PageID#3. The State did not have to plead "detailed descriptions" of its actual harm. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Ohio pleaded all that it had to.

The Secretary also faults Ohio for failing to "adduce[] any evidence" of its injuries. Sec. Br., R.45, PageID#727. Even if that argument had merit, it would establish only that Ohio is not entitled to the expedited final judgment it seeks—it would *not* justify dismissal under Rule 12(b)(1). After all, Ohio adequately *pleaded* standing. That satisfies Rule 12, since the Secretary has not challenged the factual predicates of Ohio's standing theories. *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). Anyway, Ohio proved standing. The Court previously found an injury in fact based on Congress's failure to provide clear terms. *See* Op., R.36, PageID#552–54. That injury is established, as a matter of law, by the text of the Mandate itself, *id.*, and by the undisputed fact that Ohio wants the funds— no further evidence is required. *Cf. Ohio v. Raimondo*, 2021 U.S. App. LEXIS 15035,

at *1 (6th Cir. May 18, 2021) (denying Ohio information to which it was entitled was an injury in fact as a matter of law). Further, Ohio introduced undisputed evidence that it accepted the Rescue Plan funds, Murnieks Decl., R.38-1, PageID#603, which proves both that Ohio wanted the funds and that Ohio continues to be harmed by Congress's failure to provide the States with the notice to which it is entitled. *See above* 2–4. That Ohio took the funds is additionally consistent with (even if not dispositive of) its argument that it lacked any real option *not* to take the funds and their accompanying conditions—a position already established by the Rescue Plan's undisputed size, *see* 42 U.S.C. §802(a), and the pandemic's undisputed negative economic impacts, *see* 86 Fed. Reg. at 26786–87; Op., R.36, PageID#538; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius ("NFIB")*, 567 U.S. 519, 575–85 (2012) (op. of Roberts, C.J.) (finding coercion based on similar considerations); *id*. at 680–89 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) (same). Being forced to accept conditions that Congress cannot impose directly is an injury all its own. *See Doe v. Congress of the United States*, 891 F.3d 578, 585–86 (6th Cir. 2018).

Two final points. *First*, the Secretary says (without elaborating) that "even if the Court still finds standing for the Spending Clause ambiguity claim, it should dismiss the State's remaining coercion and commandeering claims for lack of standing." Sec. Br., R.45, PageID#728. Although the Court need not reach the issue if it rules for Ohio on its ambiguity claim, this argument makes little sense. The foregoing shows that Ohio is injured by the Tax Mandate. Because the State is injured, because those injuries are fairly traceable to the Mandate, and because the State's injuries

8

would be redressed by a court order striking down the Mandate under *any* of the State's theories, the State has standing to bring *all* of its claims. Regardless, the size of the Rescue Plan offer and the economically dire circumstances in which the offer was made establish coercion- and federalism-based injuries. *Second*, there is no merit to the Secretary's argument that, if the standing issue is "close," the Court should rule for her. *Id.*, PageID#728. If the Court has jurisdiction, it *must* exercise it. Courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821). If any principle resolves a close case, it is the rule that States are "entitled to special solicitude in [the] standing analysis." *Massachusetts*, 549 U.S. at 520.

## II. Ohio prevails on the merits.

### A. The Tax Mandate violates the Spending Clause.

This Court already held that the Tax Mandate likely violates the Spending Clause. Op., R.36, PageID#537. Indeed, the Mandate violates the Spending Clause twice over, because it is unconstitutionally ambiguous and part of an unconstitutionally coercive offer. The Secretary has no sound counterargument.

#### 1. The Tax Mandate is unconstitutionally ambiguous.

Even after "poring over" the Mandate's text, the Court could not make heads or tails of what it means. *Id.*, PageID#561. The case now presents this question: Does the Interim Rule cure the unconstitutional ambiguity? No, for two reasons. First, agencies cannot resuscitate laws that Congress lacked authority to pass. This follows from first principles. Ohio Br., R.38, PageID#587–88. And it follows from

case law, too. *Id.*, PageID#588–89; *see, e.g., Va. Dep't of Educ v. Riley*, 106 F.3d 559, 567 (4th Cir. 1997) (*en banc*); *Tex. Educ. Agency v. Usde*, 992 F.3d 350, 361–62 (5th Cir. 2021). Second, even if agencies *could* promulgate regulations to cure constitutional defects in laws Congress lacked authority to pass, the Treasury's Interim Rule would not do so. Ohio Br., R.38, PageID#590–93.

a. The Secretary largely ignores the State's arguments, focusing instead on straw men. The Secretary does address, barely, the relevant case law. Specifically, she acknowledges the existence of the Fourth Circuit's decision in *Riley*, which refutes her position. The acknowledgment comes in a footnote that, despite its brevity, contains one inaccuracy and one irrelevancy. The inaccuracy is the Secretary's claim that *Riley* stands only for the proposition "that an agency could not, by regulation, act *ultra vires* to impose spending conditions that did not exist as part of the statute." Sec. Br., R.45, PageID#731–32 n.4. If that were what *Riley* said, it would still support Ohio; the Tax Mandate is so vacuous that any regulation necessarily imposes a spending condition that does not exist in the statute. But what *Riley* actually said is this: "It is axiomatic that statutory ambiguity defeats altogether a claim by the Federal Government that Congress has unambiguously conditioned the States' receipt of federal monies in the manner asserted." 106 F.3d at 567. The rest of the opinion leaves no doubt that the Fourth Circuit rejected the notion that regulations could resuscitate unconstitutionally ambiguous Spending Clause conditions. *Id.* at 567–68. The Fifth Circuit recently reached the same conclusion. *Usde*, 992 F.3d at 361–62. As for the irrelevancy, the Secretary says: "In any event, soon after [*Riley*] was issued, Congress

ratified the agency interpretation that the Fourth Circuit had doubted." Sec. Br., R.45, PageID#732 n.4. It is impossible to understand how Congress's response to the Fourth Circuit's ruling sheds any light whatsoever on the correctness of that ruling.

What really stands out in the Secretary's discussion of case law, however, is her failure to cite *a single case* holding that agencies can repair a constitutionally flawed statute with a regulation. To be sure, she cites cases for the proposition that agency interpretations of Spending Clause conditions may be entitled to deference. *See, e.g.*, *Blum v. Bacon*, 457 U.S. 132, 141 (1982); *Harris v. Olszewski*, 442 F.3d 456, 467–68 (6th Cir. 2006); *Westside Mothers v. Olszewski*, 454 F.3d 532, 543–44 (6th Cir. 2006); *City of Cleveland v. Ohio*, 508 F.3d 827, 843 (6th Cir. 2007); *United States v. Miami Univ.*, 294 F.3d 797, 814–15 (6th Cir. 2002); *Snider v. Creasy*, 728 F.2d 369, 371–73 (6th Cir. 1984); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891–92 (1984); *Baptist Mem'l Hosp. – Golden Triangle, Inc. v. Azar*, 956 F.3d 689, 692–93 (5th Cir. 2020); *Children's Hosp. Ass'n of Tex. v. Azar*, 933 F.3d 764, 770 (D.C. Cir. 2019); *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 778 (D.C. Cir. 2012). But no one disputes that proposition. Ohio assumes *arguendo* that, "if a statute meets the Spending Clause's clarity threshold," agencies may "resolve any remaining ambiguity." Op., R.36, Page ID#558. The relevant question is whether "an Executive Branch agency can whole-sale fix a constitutionally defective statute." *Id.* The Secretary has already conceded that the answer is "no," Tr., R.32, PageID#328–29, and her cases do not say otherwise.

Instead of addressing the question this case presents, the Secretary rehashes an argument the Court already rejected. Op., R.36, PageID#562. Specifically, she

11

says that Congress need not clearly state the *substance* of Spending Clause conditions, only that there *are* conditions. Sec. Br., R.45, PageID#731. The Secretary says the Court reached its contrary conclusion based on a misreading of *School District of City of Pontiac v. Secretary of U.S. Department of Education*, 584 F.3d 253 (6th Cir. 2009) (*en banc*). In fact, *Pontiac Schools* supports the Court's ruling, *see id.* at 277 (plurality), *id.*, at 284 (Sutton, J., concurring), and other binding precedents do so even more directly, *see Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 300–01 (2006); *Haight v. Thompson*, 763 F.3d 554, 569 (6th Cir. 2014).

**b.** Even assuming that agency rules *could* cure unconstitutional ambiguity in a statutory condition, the Interim Rule does not. For one thing, the Interim Rule leaves many issues unclear. More importantly, the Interim Rule's supposed interpretation of the Mandate is not entitled to any deference, meaning the Interim Rule's salvage attempt should play no role in the Court's interpretation of the Mandate.

The conclusion that the agency is not entitled to deference follows for two reasons. The first is the major-questions doctrine. Congress must speak clearly if it "wishes to assign to an agency decisions of vast economic and political significance." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quotation omitted). Nothing in the Tax Mandate or the Rescue Plan clearly gives the Treasury Department the power to set rules governing state tax policy—and that is what the Interim Rule does. Thus, the Interim Rule is not eligible for any deference on this issue. Ohio Br., R.38, PageID#592–93. The Secretary does not respond to this argument at all, forfeiting her ability to do so. *Cf. CFTC v. Erskine*, 512 F.3d 309, 314 (6th Cir. 2008) (agency

12

waived deference argument by failing to raise it).

But even putting the major-questions doctrine to the side, the Interim Rule is *still* not entitled to any deference because it does not rest on a "permissible construction of the statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). That is a problem for the Secretary, because only permissible interpretations receive deference. *Id.* The Secretary continues to insist that the Mandate is unambiguous even without the regulations. Sec. Br., R.45, PageID#733. But her argument in support of that position is pure *ipse dixit*. She simply quotes words in the statute and declares them clear. *Id.* At no point does she explain how, in a world where money is fungible, one can determine what uses of federal funds "indirectly offset" losses in "net tax revenue" caused by changes to tax law. So the latest attempt at statutory interpretation fails to move the ball. And indeed, the Secretary has already conceded that the substance of the Mandate's prohibitions are not set out in the statute itself, *see, id.*, Tr., R.32, PageID#329-30, but rather "through Treasury regulations," Opp'n to Mot. for Prelim. Inj., R.29, PageID#258.

The Secretary then turns to the Interim Rule, claiming that it "removes any doubt" regarding the substance of Ohio's obligation under the statute. Sec. Br., R.45, PageID#735. She says Ohio must agree, since it accepted the funds. *Id.* Not so. Ohio has always argued that it had no choice but to accept the Rescue Plan's funding, which meant agreeing to the Mandate. Compl., R.1, PageID#9. And of course, a State might reasonably determine that the costs of accepting an unconstitutionally ambiguous condition are worth the benefits. Further, by the time the State submitted its

13

certification, this Court had already determined that the Mandate was likely uncon-stitutional, giving Ohio reason to believe the Mandate would be unenforceable.

In any event, the Interim Rule provides little clarity. More importantly, the clarity it attempts to provide has no basis in the statutory text, meaning the supposed "interpretation" it embodies should receive no deference. This Court has already de-termined that two phrases in the Mandate—"indirectly" and "reduction in the net tax revenue of such State"—are hopelessly muddled. Op., R.36, PageID#561. Precisely because those statutory phrases lack meaning in this context, Treasury could not, and so did not, interpret them. Instead, the Interim Rule sets forth a four-part test, replete with exceptions and caveats, that has little if any discernable connection to the statutory text. *See* 86 Fed. Reg. at 26807–08.

Two examples help illustrate the Interim Rule's deficiencies. (Ohio included a more thorough discussion in its previous brief. Ohio Br., R.38, PageID#581–84, 590–92.) The first is the Interim Rule's catch-all provision, which empowers Treasury to recoup funds when, in its best judgment, a once-permissible spending cut is "subse-quently replaced" with Rescue Plan funds. 86 Fed. Reg. at 26810; Ohio Br., PageID# 583–84. The Interim Rule provides no meaningful guidance as to how the Secretary will identify impermissible replacements. True, Spending Clause conditions need not list "every improper expenditure." Sec. Br., R.45, PageID#737. But they must pro-vide clear notice as to what is permitted. The open-ended catch-all does not do that. And the Secretary does not seriously argue otherwise. She instead offers one hypo-thetical offset and asserts the offset would be captured by the catch-all. *Id.*, PageID

14

#738. But she cannot, and so does not, announce any standard for determining what the catch-all catches. What is more, the broad, open-ended scope of the catch-all seems to contradict the narrowing construction for which the Secretary still advocates—a construction that requires reading the word "indirectly" out of the Tax Mandate. *See, e.g.*, *id.*, PageID#733.

Now consider the Interim Rule's interpretation of "reduction in the net tax revenue," which is perhaps a bit clearer but even less textually justified. The Interim Rule establishes a baseline against which "actual changes in tax revenue" are to be measured. Specifically, the Interim Rule adopts the inflation-adjusted 2019 tax revenue as its baseline. 86 Fed. Reg. at 26808. The Secretary says the Interim Rule further clarifies the phrase's meaning by defining "reduction in the net tax revenue" not to include *de minimis* reductions equal to 1 percent or less of the 2019 baseline. *Id.*, PageID#736. But this 2019 baseline and the *de minimis* exception are inventions, not interpretations; no one could *interpret* the phrase "reduction in net tax revenue" to mean "reduction in net tax revenue that exceeds 1 percent of inflation-adjusted 2019 revenue." "While agencies may have authority to interpret statutes, they do not have authority to rewrite them." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 240 (6th Cir. 2019). The Interim Rule's arbitrary definition of "reduction in the net tax revenue" reflects rewriting, not interpretation, and is therefore not entitled to deference. *Chevron*, 467 U.S. at 843.

The Interim Rule provides little clarity. And it is so divorced from the Mandate's text that it must not receive any deference. Thus, even if an agency could save

an unconstitutionally ambiguous Spending Clause condition by *plausibly* interpreting the condition to provide the needed clarity, the Interim Rule would fall short.

**c.** The Secretary concludes by asserting that "Ohio's present concerns with the statutory and regulatory framework are decidedly on the margins," and pleading with the Court not to enjoin the Mandate "based on the State's speculative concerns about possible future disputes." Sec. Br., R.45, PageID#737. All of that is wrong. This is not a dispute about the Mandate's application to discrete cases. It is a dispute about whether Congress had constitutional authority to enact the Mandate—a provision that causes irreparable harm to Ohio every day it remains in force. *See above* 2–4. Because the Mandate is unconstitutionally ambiguous, and because the regulations cannot (and in any event do not) cure the constitutional defect, Congress lacked authority to impose this condition on the States. The only proper remedy is to enjoin its enforcement or, at the very least, declare it unconstitutional.

**2.   The Tax Mandate fails under the coercion test.**

The Tax Mandate is also unconstitutional, and so unenforceable, because the condition is attached to an unconstitutionally coercive offer. The States can avoid the Mandate's terms only by turning down *billions* of dollars in much-needed funding. That is not realistic; by turning down this money, Ohio would affirmatively harm its citizens, who would be put at an immense disadvantage relative to their peers in States that *do* take the money. In other words, the Rescue Plan is not an all-upside offer of the sort that States can freely accept or reject; States that reject it will inflict great harm on themselves and their citizens. This is the sort of "gun to the head"

16

that the Spending Clause prohibits. *NFIB*, 567 U.S. at 581 (op. of Roberts, C.J.).

The government responds by raising the same arguments it has raised already. It first claims that the coercion test does not apply because the Mandate only limits what Ohio can do with federal funds, and places no limits at all on what Ohio can do with its own funds. Not so. The Mandate is drafted to *look like* a limit on the use of federal funds. But given the apparent breadth of the prohibition on indirect offsets, the Mandate in fact pressures the States into pursuing Congress's preferred tax policies. *See* Reply in Supp. of Prelim. Inj., R.30, PageID#279–80. Congress cannot creatively draft its way around the coercion analysis. *NFIB*, 567 U.S. at 582 (op. of Roberts, C.J.). The Secretary further argues that States are not coerced into accepting the Tax Mandate's terms because violations of the Mandate are subject to a supposedly minor penalty. Sec. Br., R.45, PageID#740. This confuses the question *whether* the States are coerced with the question of *what* they are coerced to accept. "'Your money or your life' is a coercive proposition, whether you have a single dollar in your pocket or $500." *NFIB*, 567 U.S. at 582 n.12 (op. of Roberts, C.J.).

The Secretary raises a few new arguments also. Each fails. For example, the Secretary claims that "there are no monetary consequences if a State chooses to decline the Fiscal Recovery Funds." Sec. Br., R.45, PageID#739. That is not true. Again, Ohio would put itself and its citizens at an immense competitive disadvantage if it refused the funds. The Secretary does not dispute the point, but she says it is irrelevant. Congress has been "generous," she says, and the Court should not apply "increased scrutiny" to "increased generosity." *Id.*, PageID#740. Of course, Congress

17

is being "generous" with money it acquired by taxing Americans, including Ohioans. But regardless, scrutiny *should* increase with generosity. The "practice of attaching conditions to federal funds greatly increases federal power." *NFIB*, 567 U.S. at 675 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). The coercion test imposes a check; it prevents Congress from circumventing the limits on its powers through Spending Clause legislation that couples otherwise-unconstitutional conditions with offers the States cannot refuse. The Secretary would acknowledge that Congress cannot circumvent those limits with coercive threats to withhold previously available funds in future years. *NFIB*, 567 U.S. at 582 (op. of Roberts, C.J.). Why should it be allowed to circumvent those limits by attaching the same conditions to offers of new funding that are too generous to refuse?

The Secretary next takes issue with Ohio's argument that the Interim Rule, by requiring States to monitor and report their own compliance with the Tax Mandate, worsens the coercion problem. Sec. Br., R.45, PageID#740–41. The objection is confusing. The coercion test, everyone agrees, applies when Congress imposes "conditions that do not … govern the use of [federal] funds." *Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 183 (5th Cir. 2020) (quoting *NFIB*, 567 U.S. at 580 (op. of Roberts, C.J.)). Because the monitoring requirements "conscript" States into "the national bureaucratic army," *NFIB*, 567 U.S. at 585 (op. of Roberts, C.J.) (quotation omitted), they go beyond imposing mere limits on the *use* of funds. These requirements thus bolster the coercion test's applicability.

18

**B.    The Tax Mandate violates the Tenth Amendment.**

Because the States are coerced into accepting the Mandate, the Mandate con-stitutes direct regulation of the States themselves. And because Congress has no power to directly regulate States, the Mandate violates the Tenth Amendment. *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018). The Mandate further violates the Tenth Amendment by attempting to regulate an issue—state tax policy—that Congress can-not regulate even indirectly. *Cf. Coyle v. Smith*, 221 U.S. 559, 565 (1911). *See also* Mot. for Prelim. Inj., R.3, PageID#43–45; Reply in Supp. of Prelim. Inj., R.30, Page ID#282–84; Ohio Br., R.38, PageID#596.

The Secretary now contends that there are no subject-matter limits *at all* on Congress's power to regulate state governments via Spending Clause conditions. Thus, while Congress's power to admit States into the Union *does not* empower it to condition admission on a State's agreeing to make a particular city its capital, *Coyle*, 221 U.S. at 565, the Secretary says Congress *could* dictate a State's capital through a Spending Clause condition, Sec. Br., R.45, PageID#741. That view is irreconcilable with the States' sovereign status. The Founders split the atom of sovereignty; the Secretary wishes to fuse it back together.

**III.  Ohio is entitled to injunctive or declaratory relief.**

Because Ohio prevails on the merits, because an injunction will redress the irreparable harms it is suffering, and because the balance of harms and public inter-est justify enjoining an unconstitutional law, the Court should enjoin the Mandate in its application to Ohio. Ohio is entitled to declaratory relief, too. The Secretary

argues otherwise, contending that because Ohio can raise its objections as defenses in any future recoupment action, the State does not need injunctive or declaratory relief. Sec. Br., R.45, PageID#742–44. But pre-enforcement review generally, and declaratory-judgment actions in particular, exist precisely so that parties can avoid "the choice of abandoning their legal claim[s] or risking sanctions." *Pontiac Schools*, 584 F.3d at 278 (Sutton, J., concurring). In any event, Ohio's option to raise these arguments in a later proceeding would not spare it from the injury it is suffering *now* from the Mandate's failure to provide it with the clarity to which it is constitutionally entitled. *See* Op., R.36, PageID#545 (citations omitted). Indeed, if the Secretary is right, it is not clear why parties should *ever* be allowed to sue for declaratory and injunctive relief in Spending Clause litigation. But in reality, parties bring such claims and courts entertain them. *See, e.g.*, *Florida v. HHS*, No. 3:10-cv-91, Second Am. Compl., Doc. 148 at 22–31 (N.D. Fla.); *Pontiac Schools*, No. 2:05-cv-71535, Compl., R.1-2, PageID#56–58.

## CONCLUSION

The Court should declare the Tax Mandate unconstitutional and enjoin it.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS* (0095284)
Solicitor General
 *Trial Attorney*
ZACHERY P. KELLER (0086930)
MAY DAVIS (*pro hac vice*)
Deputy Solicitors General
30 East Broad Street, 17th Floor
6l4-466-8980
614-466-5087 fax
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for the State of Ohio*

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ Benjamin Flowers*
BENJAMIN FLOWERS (0095284)
Solicitor General